UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | |
|---|---|
| RONALD ELLIOTT STEWART, )<br> )<br>Plaintiff, )<br>v. )<br> )<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br> )<br>Defendant. )<br> ) | Case No. 1:14-cv-00614<br><br>Honorable Paul L. Maloney |

## OPINION

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On June 29, 2011, plaintiff filed his applications for DIB and SSI benefits. Plaintiff initially alleged a June 6, 2011, onset of disability. (Page ID 278, 286). He later amended his claims to allege an August 25, 2011, onset of disability. (Page ID 147, 333). Plaintiff's claims were denied on initial review. (Page ID 199-214). On January 18, 2013, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (Page ID 144-95). On March 12, 2013, the ALJ issued her decision finding that plaintiff was not disabled. (Page ID 127-137). On April 16, 2014, the Appeals Council denied review (Page ID 24-27), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The ALJ committed reversible error by not properly [] weighing the evidence and by failing to give proper credit to the opinions of plaintiff's treating physicians.

2. The ALJ committed reversible error by downgrading plaintiff's credibility because he had received unemployment benefits.

3. The ALJ committed reversible error by failing to follow the vocational expert's answers to accurate hypothetical questions.

(Plf. Brief at 11, Dkt. 12, Page ID 725). The Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012);

*Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from August 25, 2011, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity on or after August 25, 2011. (Op. at 3, Page ID 129). Plaintiff had the following severe impairments: "degenerative changes

to the lumbar spine and psoriasis." (*Id.*). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.* at 4, Page ID 130). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can lift up to ten pounds less than frequently and under ten pounds on a frequent basis. Standing and walking would be limited to two hours in an eight-hour workday and sitting should be limited to six hours in a eight-hour workday. The claimant should not climb ladders, ropes, or scaffolds. Further, the claimant should not work at unprotected heights. The claimant should climb ramps and stairs less than frequently. The Claimant should less than frequently crouch, crawl, kneel, balance, or overhead reach. The claimant should avoid concentrated exposure to vibration and dangerous, moving machinery. The claimant should avoid concentrated exposure to extremes of cold, heat, and dampness. The claimant does not have any mental limitation.

(*Id.* at 5, Page ID 131). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. (*Id.* at 5-9, Page ID 131-35).

Plaintiff could not perform any past relevant work. (*Id.* at 9, Page ID 135). Plaintiff was 46-years-old as of the date of his alleged onset of disability and 47-years-old on the date of the ALJ's decision. Thus, at all times relevant to his claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (*Id.*). Plaintiff has at least a high school and is able to communicate in English. (*Id.*).

The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education and work experience, the VE testified that there were approximately 6,100

jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (Page ID 187-92). The ALJ found that this constituted a significant number of jobs. Using Rule 201.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff has not been under a disability, as defined in the Social Security Act, from August 25, 2011, through the date of this decision. (Op. at 9-11, Page ID 135-37).

1.

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of treating physicians. (Plf. Brief at 12-13, Page ID 726-27; Reply Brief at 1-3, Page ID 746-48). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *see also Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[1] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the

---

[1]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Blankenship v. Commissioner*, No. 14-cv-2464, __ F. App'x __, 2015 WL 5040223, at * 9 (6th Cir. Aug. 26, 2015).

requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 461.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff testified that he was laid off from work on June 7, 2011, that he applied for unemployment benefits, and that he continued to collect unemployment benefits through February 2012. Plaintiff conceded that he had represented to the unemployment agency that he was ready, willing, and able to work in order to receive the unemployment benefits. (Page ID 152; *see* Page ID 318).

Plaintiff claimed an August 25, 2011, onset of disability. Most of the evidence that he presented in support of his claims for DIB and SSI benefits was generated

outside the period at issue, which ran from August 25, 2011, through March 12, 2013, the date of the ALJ's decision. (*see* Page ID 381-618, 624-37). This evidence is "minimally probative" and is considered only to the extent that it illuminates the claimant's condition during the relevant time period. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *see also Van Winkle v. Commissioner*, 29 F. App'x 353, 358 (6th Cir. 2002).

On June 23, 2011, plaintiff sought treatment from his primary care physician at Norton Family Practice, Gretchen Goltz, D.O. Plaintiff reported a two-week onset of fluctuating, intermittent lower back pain. He described the pain as an ache and denied any recent injury. Plaintiff had some muscle spasm in the lumbar spine and a mildly reduced range of motion. His straight leg raising tests were negative. His extremities displayed no edema, cyanosis, or clubbing. Plaintiff's lumbar spine x-rays indicated "mild" degenerative disc disease and osteoarthritis from L3-4 through L5-S1. Dr. Goltz offered a diagnosis of lumbago. She instructed plaintiff perform home exercises and to take Tylenol or Motrin as needed for pain relief. (Page ID 465-66, 624). On June 29, 2011, plaintiff filed his application for DIB and SSI benefits.

On August 25, 2011, plaintiff saw Yousif Hamati, M.D., at Orthopaedic Associates of Muskegon. (Page ID 641). Plaintiff reported that he did not have any specific injury, but his low back and left hip pain had slowly been getting worse. The x-rays of plaintiff's lumbar spine "showed minimal degenerative changes." Plaintiff was able "to walk on his toes and heels without any major problem. Leg rolling [was]

negative bilaterally. Neurological examination of both lower extremities as far as reflexes, motor, power and sensation were within normal limits." Plaintiff had 5/5 strength. His deep tendon reflexes were normal and he had normal sensation in both lower extremities. Dr. Hamati indicated that treatment with "conservative measures" was appropriate and told plaintiff to take Aleve tablets twice daily after meals. (Page ID 641).

The MRI of plaintiff's lumbar spine taken on September 26, 2011, showed that lumbar vertebral heights and alignment were within normal limits. There was no evidence of disc herniation. (Page ID 620-21).

On October 4, 2011, Dr. Hamati indicated that he interpreted plaintiff's MRI as showing multiple level degenerative disc disease with bulging discs and spinal canal stenosis mainly at L4-5 and bilateral neural foraminal stenosis. He advised plaintiff that he was not a good surgical candidate and that he had arthritis at multiple levels. Dr. Hamati indicated that if plaintiff continued to have back problems that he would be more than happy to provide a bilateral L4 nerve root injection. (Page ID 640). On November 10, 2011, plaintiff returned for the injection procedure. Dr. Hamati stated that he was available for plaintiff "anytime for a problem." (Page ID 639).

On May 15, 2012, plaintiff reported to Dr. Goltz that he had been outside working in the yard a few days earlier and had experienced an onset of lower back pain. He sought and obtained emergency room treatment. He described his lower back pain as an intermittent ache. His straight leg raising tests were negative and his

deep tendon reflexes were symmetric. Dr. Goltz offered a diagnosis of an acute lumbar sprain. (Page ID 647-49).

On July 8, 2011, plaintiff sought treatment at the Mercy Health Partners emergency room. Plaintiff reported to Patrick Smith, M.D., that he had been experiencing lower back pain radiating down to the back left buttock for two or three days. Plaintiff was ambulatory. His strength was 5/5. Sensation remained intact. His x-rays showed no bony abnormalities. Plaintiff was treated with pain medication and advised to follow up with his primary care provider. (Page ID 478-79).

On July 12, 2012, plaintiff sought treatment at the Mercy Health Partners emergency room. Bryan Eadie, D.O., found that plaintiff "appeared very comfortable, not in any acute distress." Plaintiff did not have any neurologic deficits and his deep tendon reflexes were equal bilaterally. His straight leg tests were negative bilaterally. Dr. Eadie felt that plaintiff was probably experiencing sciatic type pain. He gave plaintiff a shot of Decadron and Dilaudid. Plaintiff reported that he felt better. "He was able to get up and ambulate around the Emergency Department without any pain or difficulty[.]" (Page ID 665-66).

On July 16, 2012, plaintiff reported to Dr. Goltz that a few days earlier he had experienced an episode where his left leg went numb and he sought treatment at the emergency room. Plaintiff indicated that he had been told that it was his sciatic nerve. He received a pain shot and was sent home. Plaintiff also indicated that he was experiencing moderate symptoms from a rash. Dr. Goltz found that plaintiff's gait was normal and his paraspinous muscle tone was normal. His straight leg raising tests

were negative. Plaintiff was referred to a dermatologist for treatment of the rash. Plaintiff was advised to keep an appointment he had scheduled with Dr. Hamati. (Page ID 643-46).

On July 17, 2012, Dr. Hamati found that plaintiff was neurologically intact. He did have degenerative arthritis at multiple levels and was experiencing extensive psoriasis. Hamati indicated that he planned to treat plaintiff's back discomfort with a L3 selective nerve injection. (Page ID 670). On July 31, 2012, Dr. Hamati gave plaintiff the bilateral nerve root injection and plaintiff tolerated the procedure well. (Page ID 669).

On August 15, 2012, Benjamin Nykamp, M.D., saw plaintiff on a referral from Dr. Goltz. Plaintiff was oriented in all three spheres and his gait was normal. He was not experiencing any fever or itching from his psoriasis. He did have patches of erythemia and silvery scaling on his extremities. Dr. Nykamp gave plaintiff a Clobetasol Cream prescription for his psoriasis and advised him to return in a few weeks. (Page ID 675). When plaintiff returned, Dr. Nykamp noted that plaintiff's psoriasis was improving and advised him to continue using the cream. (Page ID 674).

On August 26, 2012, plaintiff sought emergency room treatment. His chief complaint was "[l]eft leg tingling." Plaintiff reported no recent episodes of falls or trauma. He had not experienced urine or bowel incontinence. Marc Whitaker, M.D., found that plaintiff's sensory and motor function remained intact. Plaintiff's CT scan showed no acute fractures or subluxations. It did show scattered multilevel degenerative changes, posterior disc bulges, and some encroachment in the neural

foraminal and central canal, but otherwise no acute findings. Plaintiff received pain medication and was sent home. (Page ID 661-64).

On August 28, 2012, plaintiff reported to Dr. Hamati that he was doing much better after his injection. He indicated that he was "just having some twinges the last two days. He also [was] very happy that the injection helped his psoriasis. It [was] completely gone." (Page ID 668). On November 6, 2012, plaintiff reported to Dr. Hamati that his back pain was returning. (Page ID 671).

On December 15, 2012, plaintiff returned to the Mercy Health Partners emergency room with complaints of leg numbness. Frank Duncan, M.D., noted that plaintiff was alert and in no apparent distress. Plaintiff's deep tendon reflexes remained intact and he had normal sensation in his lower extremities. X-rays of plaintiff's lumbar spine revealed no bony abnormalities. Plaintiff was given pain medication for low back pain with sciatica and sent home. (Page ID 676-77).

On December 18, 2012, plaintiff returned to Dr. Goltz. Plaintiff reported that he had experienced intermittent bilateral leg numbness and moderate heartburn. Plaintiff's posture and gait were normal. He was advised to follow up with Dr. Hamati regarding his back pain. Dr. Goltz gave plaintiff a prescription to address his dyspepsia. She told him to stop taking Motrin and gave him a prescription for Mobic. (Page ID 681-84).

On or about January 3, 2013, Dr. Goltz marked boxes on RFC questionnaire provided by plaintiff's attorney and indicated that plaintiff had extreme physical restrictions such as an ability to sit for only 2 hours in an 8-hour workday and that he

should "never" climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. She offered her opinion that plaintiff would not be able to sustain employment. (Page ID 685-90). The hearing transcript indicates that plaintiff's attorney completed a RFC questionnaire and Dr. Hamati signed it on January 3, 2013:[2]

> ALJ: I did have a question for you, Mr. Flynn . . . I received the RFC questionnaire from Dr. Goltz first, and then one from Dr. Hamati sometime later. Was Dr. Hamati either given a copy of, or did he see Dr. Goltz' RFC before his was filled out?
>
> ATTY: He saw Dr. Goltz', said he would concur with – based on his records, and Dr. Goltz.
>
> ALJ: And then he filled it out?
>
> ATTY: Yes. I filled it out.
>
> ALJ: Okay.
>
> ATTY: By doing it exactly as he told us to do it.
>
> ALJ: Okay, and so the handwriting that's on it, is that yours or his, the handwriting that's –
>
> ATTY: That's his.
>
> ALJ: Okay. So you checked the boxes, you gave it to him, and then he wrote in the, the diagnostic impressions and such?
>
> ATTY: No, the, the – let me look at it –

---

[2]The ALJ noted that Ms. Goltz "misdated her opinion as March 9, 2013." (Op. at 7, Page ID 133).

ALJ:  Because it looked exactly the same and the boxes were checked and if I were a school teacher I would have said he copied someone's homework,[3] and, and –

ATTY:  Well he collaborated.

ALJ:  – and – that's in the – I see what happened, okay.

ATTY:  Yeah.

ALJ:  But there's writing all over the side of it in terms of diagnostic impressions, and, and that's all Dr. Hamati?

ATTY:  Yes, he told me to – I could write that out –

ALJ:  Oh, you –

ATTY:  – quoting, quoting him, exactly quoting his notes.

ALJ:  So, okay because you know, and I know Dr. Hamati –

ATTY:  (INAUDIBLE).

ALJ :  – for years, and that's not his handwriting, so –

ATTY:  No, no, no of course not.

ALJ:  Okay.  That's what I'm, that's what I'm driving at.  He told you to write in those references.

ATTY:  As you well know, I've known hi[m] for you know 35 years.  He trusts me.

ALJ:  So you wrote them in, and then he signed it?

ATTY:  Yes.

---

[3]The RFC questionnaire completed by plaintiff's attorney and signed by Dr. Hamati is found in the record at Page ID 691-96.

(Page ID 183-84).  As noted above, the RFC form signed by Dr. Hamati essentially mirrors the RFC form completed by Dr. Goltz.  (Page ID 691-96).

The ALJ carefully considered the RFC restrictions suggested by Dr. Goltz[4] and determined that they were entitled to limited weight:

> I give this opinion little weight because it is not consistent with the record.  For instance, the claimant reported that he could perform his activities of daily living such as shopping, walking without a cane, and taking care of his family and pets.  The drastic limitation that the claimant could not perform even sedentary work reported by Dr. Goltz is inconsistent with the degree of pathology and the favorable responses from the claimant to Dr. Hamati's conservative treatment.  Further, Dr. Goltz's opinions are inconsistent with the claimant's testimony he rides a lawn mower and spends time daily in his garage making birdhouses.  Furthermore, Dr. Goltz was inconsistent with her own findings.  She opined that the claimant could occasionally drive motor vehicles and then she followed that statement up with an opinion that the claimant could never use foot pedals (Ex. 24F).

(Op. at 7-8, Page ID 133-34).

The issue of disability is reserved to the Commissioner and Dr. Goltz's opinion that plaintiff was disabled was not entitled to any special significance.  *See Bass v. McMahon*, 499 F.3d at 511; 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *see also*

---

[4]ALJs are not bound by conclusory statements of treating physicians where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation.  *See Buxton v. Halter*, 246 F.3d at 773; *see also Hernandez v. Commissioner*, No. 1:14–cv–958, 2015 WL 3513863, at * 5 (W.D.Mich. June 4, 2015). "Form reports in which a doctor's obligation is only to check a box, without explanations of the doctor's medical conclusions are weak evidence at best [.]"  *Smith v. Commissioner*, No. 13-cv-12759, 2015 WL 899207, at * 13 (E.D. Mich. Mar.3, 2015); *see also Ashley v. Commissioner*, No. 1:12-cv-1287, 2014 WL 1052357, at * 8 n. 6 (W.D. Mich. Mar.19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").

*Sims v. Commissioner,* 406 F. App'x at 980 n.1 ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Dr. Goltz's opinions in the RFC questionnaire were inconsistent with her own treatment notes and the objective medical evidence. The Sixth Circuit has consistently held that inconsistencies between proffered restrictions and the underlying treatment records are good reasons for discounting a treating source's opinions. *See e.g., Hill v. Commissioner,* 560 F. App'x 547, 549–50 (6th Cir. 2014); *Fry v. Commissioner,* 476 F. App'x 73, 75–76 (6th Cir. 2012).

Plaintiff argues, without the benefit of any supporting legal authority, that the ALJ committed error by giving less weight to the RFC form signed by Dr. Hamati because it had been filled out by plaintiff's attorney. (Plf. Brief at 11, Page ID 725). Generally, RFC questionnaires are completed by care providers, not the plaintiff's attorney. Nothing on the face of the completed form would alert a reviewer to the fact that it was completed by plaintiff's attorney for Hamati's signature. (Page ID 691-96). It was the fact that this ALJ had seen enough of Dr. Hamati's handwriting to know that he had not filled out this RFC form that led her to hearing questions which established plaintiff's attorney's role in generating it. Further, it is pellucid that the attorney's involvement was not the primary basis on which the ALJ determined that the RFC form signed by Dr. Hamati was entitled to little weight. The RFC form was entitled to little weight for the same reasons that the virtually identical RFC questionnaire responses supplied by Dr. Goltz were entitled to little weight. (Op. at 8, Page ID 134). Further, it was appropriate for the ALJ to note for the benefit of this

Court and any subsequent reviewers that, although the RFC form was eventually signed by Dr. Hamati, the suggested RFC restrictions did not appear to be Hamati's own work and "independent thought." (*Id.*). The Court finds no violation of the treating physician rule.

## 2.

Plaintiff argues that the ALJ's factual finding regarding his credibility is not supported by substantial evidence. (Plf. Brief at 13-14, Page ID 727-28; Reply Brief at 3, Page ID 748). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d at 714. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner,* 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the

opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476; *see Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d at 248. The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The ALJ found that plaintiff's testimony regarding his subjective functional limitations was less than fully credible. (Op. at 5-9, Page ID 131-35). The ALJ gave very careful attention to plaintiff's testimony. Her analysis of the evidence is quite lengthy and will not be reproduced in its entirety. Plaintiff argues that the ALJ committed error because she found that plaintiff's credibility was undermined by his application for and receipt of unemployment benefits during the period he claims to have been disabled. (Plf. Brief at 13-14, Page ID 727-28; Repl Brief at 3, Page ID 748). Plaintiff alleges an August 25, 2011, onset of disability. He applied for unemployment benefits in June 2011 and collected unemployment benefits through February 2012. (Page ID 318). The ALJ found that this was one factor undercutting his claims. (Op. at 9, Page ID 135) (The certification that plaintiff made regarding his ability to work

in order to receive unemployment compensation was inconsistent with a claim for disability). It was appropriate for the ALJ to draw an adverse inference regarding plaintiff's credibility from his application for and receipt of unemployment benefits during the period he claims to have been disabled. *See Workman v. Commissioner*, 105 F. App'x 794, 801 (6th Cir. 2004) ("Applications for unemployment and disability are inherently inconsistent."); *see also Loyacano v. Commissioner*, No. 1: 13-cv-144, 2014 WL 1660072, at * 5 (W.D. Mich. Apr. 25, 2014) (collecting cases); *Smith v. Commissioner*, No. 1:12-cv-904, 2014 WL 197846, at * 16 (S.D. Ohio Jan.15, 2014); *Barton v. Astrue*, No. 3:11-cv-1239, 2013 WL 6196297, at * 7 (M.D. Tenn. Nov. 27, 2013).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. The ALJ gave an adequate explanation why she found that plaintiff's testimony was not fully credible, and her factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

### 3.

Plaintiff argues that the ALJ committed reversible error by not following the vocational expert's answers to accurate hypothetical questions. (Plf. Brief at 12, 14-15, Page ID 726, 728-29). This argument does not provide a basis for disturbing the Commissioner's decision. Plaintiff's attorney's hypothetical questions gave full credibility to his client's testimony and assumed a RFC more restrictive than the one determined by the ALJ. RFC is an administrative finding of fact made by the ALJ. 20

C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3).  RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1); 416.945(a)(1); *see Branon v. Commissioner*, 539 F. App'x 675, 677 n. 3 (6th Cir. 2013).  Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ.  *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d at 592; *see also Ritchie v. Commissioner*, 540 F. App'x at 511.  The ALJ's factual findings regarding plaintiff's RFC and the credibility of his testimony are supported by more than substantial evidence.  The ALJ was not bound to accept the VE's testimony in response to hypothetical questions  which incorporated more significant functional restrictions than those found by the ALJ.  *See Casey*, 987 F.2d at 1235; *see also Blankenship v. Commissioner*, 2015 WL 5040223, at * 8; *Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010).

## **Conclusion**

For the reasons set forth herein,  the Commissioner's decision will be affirmed.

Dated:  September 21, 2015                             /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      United States District Judge